Ms. Glenna Butler Chairman Arkansas Towing and Recovery Board Post Office Box 8285 Searcy, Arkansas 72145
Dear Ms. Butler:
This is in response to your request for an opinion on two questions relating to Arkansas Code title 27, chapter 50, subchapter 12 (the "Abandoned Vehicles Law"), and A.C.A. § 27-35-112(a) (Repl. 1994). The Abandoned Vehicles Law governs the removal of unattended or abandoned vehicles and creates the Arkansas Towing and Recovery Board (the "Board"). The Board is empowered by the Abandoned Vehicles Law to establish licensing, insurance, and safety equipment requirements for certain towing operations, and to establish safety requirements for all tow vehicles. The Abandoned Vehicles Law does not apply, however, to:
 Tow vehicles that are registered in another state, operating under federal Interstate Commerce Commission authority, and which do not regularly do business or solicit business in the State of Arkansas. However, any tow vehicle for which this exemption is claimed must be in compliance with § 27-35-112.
A.C.A. § 27-50-1201(b)(3) (Repl. 1994).
Arkansas Code Annotated § 27-35-112(a) provides:
 No vehicle licensed in another state for use as a wrecker or similar towing vehicle shall be used to tow any automobile or truck in this state unless the state in which the wrecker or other towing vehicle is licensed permits Arkansas-licensed wreckers and towing vehicles to tow automobiles and trucks in that state.
Subsection (b) of the statute provides that towing an automobile in violation of subsection (a) is a misdemeanor and that a person guilty thereof may be fined.
You inquire with respect to:
 1. Arkansas law enforcement's authority to refuse to allow any out-of-state licensed tow vehicle to enter into Arkansas and pick up vehicles unless said state reciprocates; and
 2. Arkansas law enforcement's authority to issue citations to out-of-state licensed tow vehicle owners and/or operators for violation of § 27-35-112 and/or § 27-50-1201(b)(3).
In my opinion, Arkansas law enforcement officers may not simply "refuse to allow any out-of-state licensed tow vehicle to enter into Arkansas and pick up vehicles unless said state reciprocates." There is nothing unlawful in a tow truck operator's crossing a state line into Arkansas. And even if a law enforcement officer could be certain about the operator's intent to tow a vehicle in violation of A.C.A. § 27-35-112(a), that violation is not, in my opinion, an offense the anticipation of which would permit a law enforcement officer to stop and detain the operator under A.R.Cr.P. 3.1, which provides in relevant part:
 A law enforcement officer . . . may, in the performance of his duties, stop and detain any person who he reasonably suspects . . . is about to commit . . . a misdemeanor involving danger . . . of appropriation of or damage to property. . . .
In my opinion, a violation of A.C.A. § 27-35-112(a) would not ordinarily involve a danger of appropriation of or damage to property. "Appropriation" is defined by one source in relevant part as "a taking to the exclusion of others; a conversion of property where performed without right." BALLENTINE'S LAW DICTIONARY 86 (3d ed. 1969). Neither conversion of nor damage to the towed vehicle is an element of the offense described by A.C.A. § 27-35-112(a). In addition, as discussed below, it is my opinion that A.C.A. § 27-35-112(a) defines a violation, rather than a misdemeanor. It is not clear that A.R.Cr.P. 3.1 authorizes an officer to detain a person suspected of being about to commit a violation, even if the violation does involve a danger of appropriation of or damage to property. I conclude that a law enforcement officer may not detain a person under A.R.Cr.P. 3.1 if his reasonable suspicion is merely that a simple violation of A.C.A. § 27-35-112(a), without more, is about to occur.
Of course, once the operator engages in a course of conduct that constitutes a completed[1] violation of A.C.A. § 27-35-112(a), a law enforcement officer may, to the extent A.C.A. § 27-35-112(a) is valid law,[2] arrest the operator in accordance with A.R.Cr.P. 4.1 or 4.2, as applicable, or, as discussed below, issue a citation.
With respect to your second question, it is my opinion, assuming A.C.A. § 27-35-112(a) is valid,[3] that Arkansas law enforcement officers are authorized to issue citations for conduct that violates A.C.A. §27-35-112(a).
Such conduct is an "offense" as defined in the Criminal Code because it is "conduct for which a sentence to a term of imprisonment or fine or both is authorized by statute." A.C.A. § 5-1-105(a) (Repl. 1993). Offenses are classified as felonies, misdemeanors, and violations. A.C.A. § 5-1-105(b). Notwithstanding that A.C.A. § 27-35-112(b) provides that the offense is a misdemeanor, the offense actually appears to be a violation, because "no sentence other than a fine, or fine or forfeiture, or civil penalty is authorized upon conviction." A.C.A. §§5-1-107(a)(2), 5-1-108(b) (Repl. 1993).
A law enforcement officer "who has reasonable cause to believe that a person has committed any misdemeanor may issue a citation in lieu of arrest or continued custody." A.R.Cr.P. 5.2(a). While the rule refers only to misdemeanors, and not to violations, it is my opinion that the rule would be interpreted to confer authority to issue citations with respect to violations. The Rules of Criminal Procedure do not expressly classify offenses at all, and implicitly classify offenses only as felonies and misdemeanors; violations, as a type of offense, are not mentioned anywhere in the Rules. It appears that A.R.Cr.P. 5.2(a) was intended to mean that citations may not be issued with respect to felonies on the officer's initiative only, but may be issued by him with respect to misdemeanor and lesser offenses. If the rule were interpreted otherwise, an officer could issue a citation to a person to be charged with a misdemeanor, but would be compelled to arrest a person to be charged with a violation, an offense of lesser gravity than a misdemeanor. Such a result could not have been intended. It follows, therefore, that a law enforcement officer having reasonable cause to believe that a person has violated A.C.A. § 27-35-112(a) may, to the extent A.C.A. § 27-35-112(a) is valid, issue a citation with respect thereto.
Also in response to your second question, it is my opinion that a law enforcement officer may not issue a citation or take any other action with respect to a "violation" of A.C.A. § 27-50-1201(b)(3). That section, quoted above, does not purport to define a criminal offense.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] Although the operator's conduct prior to completion of the offense might constitute the offense of criminal attempt as defined in A.C.A. §5-3-201(a) (Repl. 1993), criminal attempt to commit an offense that is classified as a violation is not itself classified as a felony, misdemeanor, or violation. A.C.A. §§ 5-3-203 (Repl. 1993). It appears that such conduct may not be punishable. See A.C.A. § 5-1-105(a), 5-4-104(a) (Repl. 1993).
[2] In my opinion, the validity of A.C.A. § 27-35-112(a) and A.C.A. §27-50-1201(b)(3) is subject to question under the commerce clause, U.S. Const. art. 1, § 8, cl. 3, the operation of which in this context has been described as follows:
 The Commerce Clause of the United States Constitution provides that "[t]he Congress shall have Power . . . [t]o regulate Commerce . . . among the several States. . . ." Art I, § 8, cl 3. It is long established that, while a literal reading evinces a grant of power to Congress, the Commerce Clause also directly limits the power of the States to discriminate against interstate commerce. . . ." This `negative' aspect of the Commerce Clause prohibits economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." New Energy Co., supra, at 273-274. . . . When a state statute clearly discriminates against interstate commerce, it will be struck down . . . unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism. . . . Indeed, when the state statute amounts to simple economic protectionism, a "virtually per se rule of invalidity" has applied.
Wyoming v. Oklahoma, 502 U.S. 437, 454-455 (1992) (citations and footnote omitted).
Although I cannot make any conclusive determination in the context of an opinion, the statutes at issue might fairly be characterized as facially discriminatory, and no valid justification for the statutes that is unrelated to economic protectionism is immediately apparent.
[3] See footnote 2.